**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> PDV HOLDING, INC. and PETRÓLEOS DE VENEZUELA, S.A., <br><br> Defendants. | C.A. No. 15-1082-LPS <br><br> Hon. Leonard P. Stark |

**DECLARATION OF JOSE IGNACIO HERNANDEZ**

I, Jose Ignacio Hernandez, under penalty of perjury, do hereby declare:

**I.    QUALIFICATIONS**

1.     I am a Venezuelan citizen. I have a Law Degree (1997), with the mention *summa cum laude,* granted by the *Universidad Católica Andrés Bello* (Caracas, Venezuela). I have an *Advanced Study Diploma* (2001) by the *Universidad Complutense de Madrid*, and a Doctoral Degree, *cum laude,* granted by that University in 2002.

2.     I am a tenured professor of Administrative Law at the *Universidad Central de Venezuela* (Caracas, Venezuela).  I am also a Professor of Administrative Law and Constitutional Law Postgraduate Studies at the *Universidad Católica Andrés Bello*. I am the Chairman of the Public Law Center of the *Univerisdad Monteávila* (Caracas, Venezuela), and a researcher of the Legal Research Institute of the *Universidad Católica Andrés Bello*. I was a visiting researcher at *Georgetown University* (2014).

3.     I am the Director of the *Revista Electrónica de Derecho Administrativo* (*Electronic Journal of Venezuelan Administrative* Law) and the Director of the *Revista de la Facultad de Derecho* de la *Universidad Católica Andrés Bello* (*Universidad Católica Andrés Bello Law Review*). I am member of the Ibero-American Association of Regulation (ASIER); the International Institute of Administrative Law and the Ibero-American Forum of Administrative Law (FIDA).

4.     I have written fourteen books related to Administrative and Constitutional Law, and more than one hundred articles in those fields published in Venezuela, Colombia, Peru, Brazil, Argentina, Chile, México, Dominican Republic, United States of America, Spain, Italy and Poland. Part of my research has been about the oil regulation in Venezuela, including my 2016 book *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos* (*The Venezuelan legal principles in the Hydrocarbons Law*).

## II.   INSTRUCTIONS

5.     I have been instructed by Gibson, Dunn & Crutcher LLP on behalf of Crystallex International Corp. ("Crystallex") to provide a report in connection with Crystallex's motion for a preliminary injunction against PDV Holding, Inc. ("PDVH"). I understand that that motion is part of a broader dispute in which Crystallex alleges that PDVH, Petróleos de Venezuela, S.A. ("PDVSA"), and CITGO Holding, Inc. ("CITGO") executed a series of transactions in an attempt to hinder and delay creditors like Crystallex.

6.     In the context of that dispute, I have been asked to opine on the relationship between PDVSA and the Bolivarian Republic of Venezuela ("Venezuela") under Venezuelan Law, specifically whether PDVSA operates as a separate entity from the Venezuelan government.

7.     For this report, I have reviewed the Venezuelan constitution, legal acts, official government documents, Tribunal and court decisions and scholars' opinions concerning the relationship between Venezuela and PDVSA under Venezuelan Law. A list of these sources has been set out at Appendix A, and the sources themselves have been attached to this Declaration. English translations are available upon request.

## III.   AS A MATTER OF LAW, PDVSA IS AN ARM OF THE VENEZUELAN GOVERNMENT

### A.   PDVSA Was Created By Presidential Decree, Under The Nationalization Policy Of 1975

8.     The creation of PDVSA, as a company owned by the Venezuelan State, should be understood in the context of oil nationalization in Venezuela adopted in 1975.

9.     The Organic Law that Reserves the Hydrocarbons Industry and Commerce ("Nationalization Law") was enacted in 1975, and entered into force the following year.[1] Pursuant to the Nationalization Law, all the hydrocarbon activities (including oil) were reserved to the State (Article 1). Consequently, only the State was allowed to conduct such activities (Article 5).[2]

10.    Article 6 of the Nationalization Law stated that the National Executive was in charge of the management and operation of the reserved activities through State companies. Those companies are governed by the Nationalization Law and its regulations, by their own statutes, by the regulations of the National Executive and by Private Law. The companies are also required to pay taxes and make other contributions for concessionary companies (Article 7).

---

[1]   Official Gazette N° 1.769 extraordinary, dated August 29, 1975.

[2]   According to this article, "the State will develop the activities mentioned in article 1 directly though the National Executive or through entities of its own property."

11.     Accordingly, the report of the "Presidential Commission for the Oil Reversal" (1974) concluded that "[t]o conduct the nationalized oil industry and adjust it to the highest interest of the country, it is necessary to create the 'National Oil Administration.'"[3]

12.     The "National Oil Administration" was conceived as a group of state-owned companies with technical autonomy in the execution of oil operations but under the total control of the National Government. For this purpose, and pursuant to the Nationalization Law, PDVSA was created by Presidential Decree N° 1123 of August 30, 1975[4] as a State Holding Company to "comply with and execute the hydrocarbons policies dictated by the National Executive through the Ministry of Mining and Hydrocarbons in the activities that are entrusted to it."[5] It controls the operation of its affiliates that were in charge of the exploration and exploitation activities.[6]

13.     Thus, whereas all state companies are under the "guardianship control" of the National Government,[7] the Executive's control over PDVSA is unique and more direct. PDVSA is considered a State company pursuant to the Public Administration Organic Law ("LOAP").[8] According to the LOAP, even though PDVSA has its own legal personality, its activities are controlled by the National Executive Branch.[9]

14.     The 1975 Nationalization Law was repealed by the Organic Law of Hydrocarbons of 2001, and then reformed in 2006 (the "Hydrocarbons Organic Law").[10] The Hydrocarbons Organic Law again required that the "primary activities" of hydrocarbons (exploration and exploitation) should be performed through PDVSA and its affiliates.[11] And Decree N° 3299, discussed further below, confirms that PDVSA is mandated to perform the "primary activities" of the government and "will comply and achieve the hydrocarbons policies dictated by the National Executive, through the Mining and Energy Ministry."[12]

15.     More specifically, PDVSA acts under the direct supervision of the Sector Vice-Presidency of Economy (which coordinates all the activities related to oil and mining) and the

---

[3]   *Archivo de Derecho Público y Ciencias de la Administración. Régimen jurídico de las nacionalizaciones,* Vol 2, Universidad Central de Venezuela, pp. 565 et seq.

[4]   Article 1, of the Decree Nº 1123 which creates the company PDVSA. *See* Official Gazette Nº 1.770 extraordinary, dated August 30, 1975.

[5]   Article 1, of the Decree Nº 1123.

[6]   Article 2 of the Decree Nº 1123.

[7]   *See* José Araujo Juárez, *Derecho Administrativo General. Administration Pública,* Ediciones Paredes, Caracas, 2011, p 210 et seq.

[8]   Official Gazette N° 6147 extraordinary, dated November 17, 2014.

[9]   *See* Articles 119 and 120 of the LOAP.

[10]  Official Gazette Nº 38.493, dated August 4, 2006.

[11]  Official Gazette Nº 38.493, Article 9 and 22.

[12]  Decree N° 3299 adopted the Articles of Incorporation of PDVSA. *See* Official Gazette Number 38.081, dated December 7, 2004, specially Clause 2; *see also* Article 8, Hydrocarbons Organic Law.

3

Ministry of the People's Power for the Oil.[13] PDVSA's role is limited to the technical execution of the oil policies adopted by the National Government, specially, thorough the Vice-Presidency of Economy and the Ministry of the People's Power for the Oil.

### B. The Venezuelan Constitution Affirms PDVSA Is A Venezuelan State Entity

16. PDVSA's role as the State entity responsible for hydrocarbons exploration and exploitation is ratified in Article 303 of the Venezuelan Constitution.[14] Article 303 states that "[f]or reasons of economic and political sovereignty and national strategy, the State shall retain all shares of [PDVSA]."

17. The Venezuelan Supreme Court has found that "even though [PDVSA] is a company constituted and organized as a commercial entity, it is beyond doubt, as is affirmed in the Constitution, that the company is part of the general structure of the Public National Administration."[15] The Supreme Court has considered that PDVSA's activities "*play a fundamental role in the national economy*"[16] and that PDVSA has all the "privileges" of the Republic.[17] This means that PDVSA and its affiliates are equivalent to the administrative agencies of the Government.

### C. Venezuela's Control Over PDVSA's Corporate Structure And Activities

18. Decree N° 3.299 contains PDVSA's articles of incorporation and sets out PDVSA's corporate structure.[18] As per that Decree, PDVSA is organized as a State Holding Company, and Venezuelan government officials have control over PDVSA's day-to-day business operations. For example, the articles of incorporation explain that:

   a. PDVSA's mission is to plan, coordinate and supervise the activities of its affiliates or subsidiaries that directly conduct the exploration, exploitation, transportation, manufacturing, refinement, storage and commercialization of oil and other hydrocarbons. (Clause 2). But that mission must be achieved under the **instruction and public policies of the National Executive**. (Clause 2)

---

[13] Articles 14 and 43 of the Decree N° 2378, of *General Organization of the National Public Administration* (Official Gazette N° 6238 extraordinary, dated July 13, 2016).

[14] Constitution of the Bolivarian Republic of Venezuela (Official Gazette Nº 5908 extraordinary dated February 19, 2009).

[15] Constitutional Chamber of the Supreme Tribunal of Justice, decision number Nº 464, dated March 18, 2002. I have attached to my Declaration an English translation of the relevant portion of this decision.

[16] Chamber of Social Cassation, Supreme Tribunal of Justice, decision number 1481, dated October 2, 2008.

[17] Constitutional Chamber of the Venezuela Supreme Tribunal, decision N° 281, dated February 26, 2007.

[18] I have attached to my Declaration English translations of the relevant Articles of Incorporation.

4

    b. PDVSA's highest authority is the Assembly (Clause 7).  As Venezuela is PDVSA's only shareholder, the **Assembly is represented by the National Executive Branch of Venezuela**. (Clause 11)

    c. PDVSA is represented by a Board of Directors that is **designated by Presidential Decree** (Clauses 16, 17).

    d. The President of PDVSA manages the company and is its legal representative (Clause 33).  PDVSA also has vice-presidents (Clause 35) and a Shareholder Counsel, which are also **designated by Presidential Decree** (Clause 38).

19. On a case-by-case basis, the government also passes decrees and resolutions, as and when it pleases, to direct PDVSA to perform certain activities to achieve its objectives.  For instance, to meet its OPEC obligations, the National Government regularly dictates the oil production of PDVSA and its affiliates.[19]  In a very recent case, by Decree 2.712, the President ordered PDVSA Agrícola to transfer certain assets to another State company "Corporación de Desarrollo Agrícola, S.A."[20]

20. The government has also directed PDVSA and its affiliates achieve its expropriation objectives.  For instance, Article 6 of the *Organic Law that Reserve to the State assets and services connected to the hydrocarbons primary activities*[21] establishes that "[t]he National Executive can declare the total or partial expropriation of the shares or assets of the companies that exercise the services referred in the previous articles, according to the Law of Social Interest and Public Utility Expropriation. The expropriation entity will be Petróleos de Venezuela S.A., (PDVSA) or the affiliate designed for such purpose."

21. Several learned commentators have confirmed that PDVSA and its affiliates are considered a state company of a unique nature because they shall act under the National Government policies.  According to Venezuelan professor Allan R. Brewer-Carías:

> Petróleos de Venezuela, S.A., is a "state company" of the exclusive property of the State, that acts in accordance with State policies, and in consequence, it is integrated in the general organization of the Administration of the State, as an entity of the decentralized administration, but with a Private Law form.[22]

22. In a similar way, Venezuelan professor Isabel Boscán de Ruesta concluded that PDVSA is a "a legal entity of public nature, special and unique."[23]  I have similarly written that

---

[19] *See* Resolution N° 195, in Official Gazette number 41.063, dated December 29, 2016.

[20] *See* Decree 2712, in Official Gazette number 41.086, dated January 31, 2017.

[21] Official Gazette Nº 39173 dated May 7, 2009.

[22] Allan Brewer-Carías "El carácter de Petróleos de Venezuela S.A. como instrumento del Estado en la Industria Petrolera," *Revista de Derecho Público N° 23,* 1985, p. 81.

[23] Isabel Boscán de Ruesta, "Consideraciones sobre la naturaleza legal de Petróleos de Venezuela, S.A.," en *Revista de Derecho Público N° 9,* Caracas, 1982, p. 60.

5

PDVSA and its affiliates were created as instrumental tools of the Government with the only purpose of executing its oil policies.[24]

## IV. PDVSA IS A POLITICAL TOOL OF THE GOVERNMENT

### A. The Establishment Of The "New PDVSA"

23. In 2002, the National Executive increased its control over PDVSA through a series of reorganizations, which led the company to be called, informally, the "New PDVSA." The main consequence of this transformation was that the Government increased its political control over PDVSA and its affiliates. The technical nature of those companies was replaced with a political role under the socialist model.

24. The Government's increased control over PDVSA and its affiliates is established in both the Government's and PDVSA's strategic plans.  The Government's six-year "Homeland Plan" for 2013-2019 has as its "Historical Objective Number 1" that the State "Preserve and guarantee State control over Petróleos de Venezuela S.A. (PDVSA)."[25]  Similarly, the *PDVSA Strategic Socialist Plan 2016-2025* confirmed that PDVSA should be transformed in a "Socialist and Revolutionary PDVSA".[26]

25. According to the Minister or the People's Power for Oil "[t]he 'New PDVSA' is a national company, subordinated to the Venezuelan State and with a profound compromise with the real owner of the oil: the Venezuelan people."[27]

26. Among other things, it was at this time that the Government nationalized oil concessions given to private investors, and granted those concessions to PDVSA affiliates (including mixed companies).  During this time period, the State also increased its control over downstream activities. As a result, only PDVSA affiliates were allowed to carry on oil activities. This policy was called, by PDVSA, the "Whole Oil Sovereignty."

27. As a consequence, the Government now controls the State's oil resources, through PDVSA, much more intimately than it did before.  For example, as mentioned above, several Government Ministers are members of PDVSA's Boards of Directors.  For a long time, PDVSA's President was also the Minister in charge of the oil sector. This allows the Government to control

---

[24] José Ignacio Hernández,  *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos,* Academia de Ciencias Políticas y Sociales, Caracas, 2016,  p. 66.

[25] In the "Historical Objective Number 1," the "Homeland Plan" determines as an objective: "*1.2.2 Preserve and guarantee the State control over Petróleos de Venezuela S.A. (PDVSA)." See* Official Gazette number 6118 extraordinary, dated December 4, 2013.

[26] *PDVSA Strategic Socialist Plan 2016-2015,* p. 33 and 34. See: http://www.pdvsa.com/images/pdf/pes.pdf [Review: 04.08.17].

[27] *See*: http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=36 [Review: 04.08.17].

the daily operation of PDVSA.[28] The current PDVSA's Board of Director was appointed by Decree N° 2730.[29] This Board has the following Directors: *(i)* Eulogio Antonio del Pino Díaz (President); *(ii)* Maribel del Carmen Parra Perozo (Executive Vice President); *(iii)* Nelson José Ferrer Sánchez (Exploration and Production Vice President and Internal Director); *(iv)* Guillermo Gustavo Blanco Acosta (Refining Vice President and Internal Director); *(v)* Simón Alejandro Zerpa Delgado (Finance Vice President and Internal Director); *(vi)* Delcy Eloina Rodríguez Gómez (Foreign Affairs Vice President and Internal Director, Venezuela's Minister of Foreign Affairs); *(vii)* Ysmel Romer Serrano Florez (Supply and Commerce Vice President and Internal Director); *(viii)* Marianny Josefina Gómez Silva (Planning and Engineering Vice President and Internal Director); *(ix)* Yurbis Josefina Gómez (External Director); *(x)* Ricardo Andrés León Sabala (External Director); *(xi)* Rodolfo Clemente Marco Torres (External Director, Venezuela's Food Minister); *(xii)* Ricardo Menendez Prieto (External Director, Venezuela's Planning Minister) *(xiii)* and Wils Asencion Rangel Linares (External Director).

### B. The Oil Sowing Plan Expands PDVSA's Role To Assist With The Government's Social Objectives

28. The Government assigns to PDVSA political objectives in accordance with its socialist planning. This policy was called the "Oil Sowing Plan." According to this plan, PDVSA's activities must aim to satisfy collective necessities under the control of the Government. Because of this, PDVSA assumed economic activities, such as agricultural activities, that are different from its "primary activities."

29. In the 2012 Annual Management Report, PDVSA summarized this policy as follows:

> In the context of the transformation process of the New PDVSA, the Company has promoted strengthening of the new socio-economic model, through the creation of the so called "non-oil affiliates." These affiliates have been the cornerstone of the construction of the new socialist model of business that support the transformation and change process of the national productive infrastructure.[30]

30. These non-oil affiliates include, among others:[31]

- PDVSA Agrícola S.A. Its purpose is to promote the State's agricultural and industrial infrastructure and produce food like cereals (rice, for example), legumes (such as beans) and animal protein products like chicken meat, pork meat and beef.

---

[28] Since 2002, it is common that PDVSA's President acts also as Minister. In 2015, for example, PDVSA's President was also the Minister. *See* Decree N° 1.945, published in Official Gazette N° 40.727, dated August 19, 2015.

[29] Official Gazette number 6.284 extraordinary dated January 29, 2017.

[30] PDVSA 2012 Annual Management Report, p. 16. *See* http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%20Anuales/informe%20de%20gestion/2012/Informe%20de%20Gestio%CC%81n%20Anual%202012%20(parte%201).PDF [Review: 04.08.17].

[31] PDVSA 2015 Annual Management Report, 2016 p. 107 *et seq*.

7

- PDVSA Desarrollos Urbanos S.A. Its purpose is to carry on housing projects in the context of National Government programs, such as the "Great Mission Venezuela Housing" (*Gran Misión Vivienda Venezuela*).

31. To fulfill the political objectives of the "Oil Sowing Plan," the Government assigned to PDVSA "duties of social responsibilities." The Government also increased its control over PDVSA's revenues through extra-budgetary funds that were administered under the discretional decisions of the President, such as the Fund for the National Development (FONDEN).[32] Specially, PDVSA supported National Government social programs, called "missions," in activities such as food and housing.

32. This is summarized in the PDVSA Annual Management Report 2015:

> In accordance with articles 302 and 3011 of the Constitution and article 5 of the Hydrocarbons Organic Law, that regulates the PDVSA duties in the social development of the country, the Company is the main supporter of the Venezuelan economy, contributing actively to the current process of XXI Century Socialism under the Homeland Plan, that contains the Second Socialist Plan of Social and Economic Development of the Nation 2013-2019.[33]

33. Where PDVSA didn't execute on the "Oil Sowing Plan" directly through one of its subsidiaries created for that purpose, it did so by funding FONDEN. There were three ways in which the National Government captured PDVSA's revenues through FONDEN. First, the Government mandated that PDVSA's foreign currencies, obtained through oil exports, be exchanged with the Venezuelan Central Bank at a substantially inflated Bolivar rate. The Central Bank would in turn transfer any "surplus international reserves" to FONDEN. Second, after 2005, PDVSA was permitted to transfer its foreign currency directly to FONDEN if it did not exchange it with the Central Bank at the mandated rate.[34] Third, in 2008, PDVSA and its affiliates were levied with a special contribution based on the "extraordinary oil prices." The incomes obtained from this special contribution were also transferred to FONDEN.[35]

---

[32] In 2012, almost 70% of PDVSA contribution to the national budget was made through FONDEN. See: Pedro Luis Rodríguez y Luis Roberto Rodríguez, *El Petróleo como instrumento de progreso,* IESA, Caracas, 2013. p. 118. FONDEN was created by the Decree N° 3854, published in the Official Gazette N° 38.261, dated August 30, 2005. In creating FONDEN, it was made clear that "the remaining foreign currencies obtained from hydrocarbons exports, will be transferred to the Fund."

[33] PDVSA 2015 Annual Management Report, p. 16. *See:* http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%20Anuales/informe%20de%20gestion/2015/Informe%20Gestio%CC%81n%20Anual%20%202015.pdf [Review: 04.08.17].

[34] *See* Reform of the Venezuelan Central Bank Law (Official Gazette N° 38232, dated July 20, 2005).

[35] The special contribution for the "extraordinary oil prices" was adopted by the *Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market. See:* Official Gazette N° 38.910, dated April 15, 2008.

34. At present, PDVSA does not make direct contributions to FONDEN and the special contribution (due to depressed oil prices); rather, the PDVSA's revenues are channeled to FONDEN through the Venezuelan Central Bank currency exchange program[36].

35. The economic contribution of PDVSA to the National Government social programs is summarized on PDVSA's webpage as follows:

> PDVSA designs and implements social development projects aligned with and in coordination with the social plans of Venezuela for the benefit of its communities. Oil revenues are used for health, food, investment, roads and various funds, including: Independence Fund 200, Simon Bolívar Fund for Comprehensive Reconstruction, Asphalt Fund, and the Socially Owned Companies Fund (EPS), in addition to contributions to the National Development Fund (FONDEN) and the Chinese Fund. In this way we closely link oil with social matters for the welfare of the country.[37]

### C. The Government Enters Into International Obligations On Behalf Of PDVSA

36. Another legal manifestation of the "New PDVSA" is that the National Government uses PDVSA as an instrument to fulfill international agreements. For instance, PDVSA is the tool through which the Government exercises its obligations in "Petrocaribe," a regime established to promote the social and economic development of the Caribbean.[38] As part of this regime, Venezuela has entered into several *Energetic Cooperation Agreements* that establish obligations for PDVSA and its affiliates with respect to the provision of oil, among other things.[39]

37. The Government similarly imposes on PDVSA the duty to provide oil to China to cover its debt obligations. This is arrangement is established by a 2008 Covenant regarding the Venezuela-China Joint Financing Fund, as amended in 2012.[40]

---

[36] *See:* Partial Reform Law of Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market (Official Gazette number 40.114, dated February 20, 2013).

[37] " "PDVSA Social Development", at http://www.pdvsa.com/index.php?option=com_content&view=article&id=6566&Itemid=897&lang=en

[38] The *Energetic Cooperation Agreement "Petrocaribe,"* of 2005, created an international fund granted by Venezuela to promote social and economic development in the Caribbean (Article II). Venezuela assumes the obligation to provide oil at favorable rates to certain Caribbean countries (Article IV). PDV Caribe, a subsidiary of PDVSA, was designated to carry on Venezuela's obligation under the Agreement (Article III).

[39] These Agreements have been entered into with Argentina, Uruguay, Bolivia, Cuba, Nicaragua and Portugal. *See*: Juan Cristóbal Carmona Borjas, *Actividad Petrolera y Finanzas Públicas en Venezuela,* Academia de Ciencias Políticas y Sociales, Caracas, 2016, p. 357 *et seq*.

[40] Official Gazette Nº 39.019, dated September 18, 2008, amended by Official Gazette N° 39.927, dated May 22, 2012. For a summary of how this program operated, *see* Juan Cristóbal Carmona Borjas, *Actividad Petrolera y Finanzas Públicas en Venezuela,* cit., pp. 344 *et seq*.

38. Yet another example is the international agreements adopted in the context of the *Bolivarian Alliance for the People of our America* (ALBA, for its acronyms in Spanish), which impose on PDVSA certain financial obligations.[41]

\* \* \* \*

39. In summary, the Government has passed several laws and decrees mandating PDVSA's conduct to be aligned with its social and political goals. Similarly, it uses PDVSA as a political tool to achieve its domestic and international objectives. PDVSA, in turn, must follow these obligations dictated to it by the Government.

---

[41] The *Agreement of Food Security and Sovereignty of the Member States of Petrocaribe and the Alba*, dated 2009, established in article 5 the following: "*The management of funds will be realized through a trust constituted by Petróleos de Venezuela S.A. (PDVSA) in the Alba Bank., on behalf of the initiative or operator designated by the Ministerial Council.*" *See* Official Gazette N° 39183, dated May 21, 2009.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 10, 2017.



_____

José Ignacio Hernández G.

**Appendix A – Sources**

i. Organic Law that Reserves the Hydrocarbons Industry and Commerce (Official Gazette N° 1.769 extraordinary, dated August 29, 1975).

ii. Report of the "Presidential Commission for the Oil Reversal", of 1974. In: *Archivo de Derecho Público y Ciencias de la Administración. Régimen jurídico de las nacionalizaciones*, Vol 2, Universidad Central de Venezuela, pp. 565 et seq.

iii. Decree Nº 1123, which creates PDVSA (Official Gazette Nº 1.770 extraordinary, dated August 30, 1975).

iv. José Araujo Juárez, *Derecho Administrativo General. Administration Pública,* Ediciones Paredes, Caracas, 2011, p. 210 et seq.

v. Public Administration Organic Law (Official Gazette Nº 6147 extraordinary, dated November 17, 2014).

vi. Organic Law of Hydrocarbons (Official Gazette Nº 38.493, dated August 4, 2006).

vii. Decree N° 3299 that adopted the Articles of Incorporation of PDVSA (Official Gazette Number 38.081, dated December 7, 2004). (English Translation Provided)

viii. Decree N° 2378, of General Organization of the National Public Administration (Official Gazette N° 6238 extraordinary, dated July 13, 2016).

ix. Constitutional Chamber of the Supreme Tribunal of Justice, decision number Nº 464, dated March 18, 2002. (English Translation Provided)

x. Chamber of Social Cassation of the Supreme Tribunal of Justice, decision number 1481, dated October 2, 2008.

xi. Constitutional Chamber of the Venezuela Supreme Tribunal, decision N° 281, dated February 26, 2007.

xii. Constitution of the Bolivarian Republic of Venezuela (Official Gazette Nº 5908 extraordinary dated February 19, 2009).

xiii. Resolution N° 195, related with OPEC quotas (Official Gazette number 41063, dated December 29, 2016).

xiv. Decree 2712, related with assets of PDVSA Agrícola (Official Gazette number 41086, dated January 31, 2017).

xv. Organic Law that Reserve to the State assets and services connected to the hydrocarbons primary activities (Official Gazette Nº 39173 dated May 7, 2009).

xvi. Allan Brewer-Carías "El carácter de Petróleos de Venezuela S.A. como instrumento del Estado en la Industria Petrolera", *Revista de Derecho Público N° 23,* 1985, p. 81.

xvii. Isabel Boscán de Ruesta, "Consideraciones sobre la naturaleza legal de Petróleos de Venezuela, S.A.", en *Revista de Derecho Público N° 9,* Caracas, 1982, p. 60.

xviii. José Ignacio Hernández, *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos,* Academia de Ciencias Políticas y Sociales, Caracas, 2016, p. 66.

xix. Homeland Plan that contains the Second Socialist Plan of Social and Economic Development of the Nation 2013-2019 (Official Gazette number 6118 extraordinary, dated December 4, 2013).

xx. PDVSA Strategic Socialist Plan 2016-2015 (http://www.pdvsa.com/images/pdf/pes.pdf).

xxi. Minister or the People's Power for Oil information about the "New PDVSA" (: http://www.mpetromin.gob.ve/portalmenpet/secciones.php?option=view&idS=36).

xxii. Decree N° 1.945, that appointed the then PDVSA's President as Minister (Official Gazette N° 40.727, dated August 19, 2015).

xxiii. Decree N° 2730 that appointed PDVSA's Board of Directors (Official Gazette number 6.284 extraordinary dated January 29, 2017).

xxiv. PDVSA 2012 Annual Management Report, p. 16. ( http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%20Anuales/informe%20de%20gestion/2012/Informe%20de%20Gestio%CC%81n%20Anual%202012%20(parte%201).PDF).

xxv. Pedro Luis Rodríguez y Luis Roberto Rodríguez, *El Petróleo como instrumento de progreso*, IESA, Caracas, 2013. p. 118.

xxvi. Decree N° 3854, that creates FONDEN (Official Gazette N° 38.261, dated August 30, 2005).

xxvii. PDVSA 2015 Annual Management Report, p. 107 (http://www.pdvsa.com/images/pdf/RELACION%20CON%20INVERSIONISTAS/Informes%20Anuales/informe%20de%20gestion/2015/Informe%20Gestio%CC%81n%20Anual%20%202015.pdf).

xxviii. Reform of the Venezuelan Central Bank Law (Official Gazette N° 38232, dated July 20, 2005).

xxix. Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market (Official Gazette N° 38.910, dated April 15, 2008).

xxx. Reform of the Venezuelan Central Bank Law (Official Gazette number 6211 extraordinary, dated December 30, 2015).

xxxi. Partial Reform Law of Special Contribution Law over Extraordinary Prices in the International Hydrocarbons Market (Official Gazette number 40.114, dated February 20, 2013).

xxxii. "PDVSA Social Development", at http://www.pdvsa.com/index.php?option=com_content&view=article&id=6566&Itemid=897&lang=en

xxxiii. Energetic Cooperation Agreement "Petrocaribe" (Official Gazette N° 38.344, dated December 27, 2005).

xxxiv. Juan Cristóbal Carmona Borjas, *Actividad Petrolera y Finanzas Públicas en Venezuela*, Academia de Ciencias Políticas y Sociales, Caracas, 2016, pp. 299 et seq.

xxxv. Venezuela and China Covenant regarding the *Joint Financing Fund* (Official Gazette Nº 39.019, dated September 18, 2008).

xxxvi. Amendment of the China Covenant regarding the *Joint Financing Fund* (*See:* Official Gazette N° 39.927, dated May 22, 2012).

xxxvii. The Agreement of Food Security and Sovereignty of the Member States of Petrocaribe and the Alba (Official Gazette N° 39183, dated May 21, 2009).

**José Ignacio Hernandez G.**

| | |
|---|---|
| **Studies** | **1992-1997. Universidad Católica Andrés Bello (Caracas, Venezuela).** |
| | Law Degree (*Summa Cum Laude* diploma) |
| | **1999-2001. Universidad Complutense de Madrid** |
| | Diploma in Higher Education |
| | **1999-2002 Universidad Complutense de Madrid** |
| | Juris Doctor (JD) |
| **Academic Activities** | 2004- Administrative Law Professor, Universidad Central de Venezuela. |
| | 2004- Administrative Law Professor, Universidad Católica Andrés Bello. |
| | 2007 Chaiman. Public Law Center, Universidad Monteávila. |
| | Visiting Researcher, Georgetown University, 2014. |
| **Other Distinctions** | Award of the Political and Social Academy (2004) |
| | Member of the Ibero American Economic Regulation Association (ASIER) |
| | Vice Director of the *Revista de Derecho Público* |
| | Director of the *Revista Electrónica de Derecho Administrativo Venezolana* |
| | Member of the Ibero American Forum of Administrative Law |
| | Member of the International Association of Administrative Law |
| **Professional activities** | 2006- Partner, Grau, García, Hernández & Mónaco, Socio Fundador. |
| | Legal expert on Venezuelan Law in international investment arbitration proceedings |
| **Main Publications** | Books |
| | *La libertad de empresa y sus garantías jurídicas. Estudio comparado del Derecho Español y Venezolano,* FUNEDA-IESA, Caracas, 2004 |
| | *Reflexiones críticas sobre las bases constitucionales de la responsabilidad patrimonial de la Administración en Venezuela,* FUNEDA, Caracas, 2004. |
| | *Introducción a la nueva Ley de Protección al Consumidor y al Usuario,* FUNEDA, Caracas, 2004. |

*El régimen legal del servicio universal de telecomunicaciones en Venezuela,* FUNEDA, Caracas, 2005.

*Derecho administrativo y regulación económica,* Editorial Jurídica Venezolana, Caracas, 2006.

*Reflexiones sobre la Constitución económica y el modelo socioeconómico en Venezuela*, FUNEDA, Caracas, 2008.

*Comentarios a la Ley Antiacaparamiento,* FUNEDA, Caracas, 2008.

*Introducción al concepto constitucional de Administración Pública,* Editorial Jurídica Venezolana, Caracas, 2011.

*Lecciones de procedimiento administrativo,* FUNEDA, Caracas, 2012.

*Administración Pública, Desarrollo y Libertad en Venezuela,* Caracas, 2012.

*Comentarios a la nueva Ley de Régimen Cambiario y sus Ilícitos,* FUNEDA, Caracas, 2014.

*La expropiación en el Derecho administrativo venezolano,* UCAB, Caracas, 2014.

*El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos,* Academia de Ciencias Jurídicas Venezolanas, Caracas, 2016.

*Derecho administrativo y arbitraje internacional de inversiones,* CIDEP-Editorial Juríica Venezolana, Caracas, 2016.


Main articles

1. "El Amparo sobrevenido como medida cautelar, con especial referencia al contencioso administrativo", en *Revista de Derecho Administrativo número 4*, Editorial Sherwood, Caracas, 1998.
2. "Un ensayo sobre el concepto de servicio público en el Derecho venezolano", en *Revista de Derecho Público número No. 89-90/91-92,* Caracas, 2002.
3. "Cauces de intervención de la iniciativa económica pública y privada en la nueva Ley Orgánica de Hidrocarburos", en *Revista Derecho y Sociedad número 3,* Universidad Monteávila, Caracas, 2002.
4. "Reflexiones sobre la nueva ordenación de los hidrocarburos gaseosos en Venezuela", en *Temas de Derecho Administrativo. Libro Homenaje a Gonzalo Pérez Luciani, Tomo I,* Tribunal Supremo de Justicia, Caracas, 2002.
5. "Imposición Directa y Discriminación", *Revista Impuestos-Legis,* Bogotá, 2003.
6. "Disciplina jurídico-administrativa de la libertad económica", en *VII Jornadas Internacionales de Derecho Administrativo "Allan R. Brewer-Carías", Tomo I,* FUNEDA, Caracas, 2005.
7. "Contratos de la administración y contencioso administrativo. Ensayo sobre la necesaria superación de una tesis anacrónica", en *VIII Jornadas Internacionales de Derecho Administrativo "Allan Randolph Brewer Carías", Tomo I,* FUNEDA, Caracas,

**2**

2006.
8. Hernández G., José Ignacio, "Evolución y situación actual de la regulación de los hidrocarburos en Venezuela", en *Revista de Derecho de las telecomunicaciones e infraestructuras en red N° 27,* Madrid, 2006
9. "Regulación económica y Derecho mercantil venezolano a comienzos del siglo XXI", en *Foro de Derecho Mercantil. Revista Internacional, Nº 21,* Bogotá, 2008.
10. "El contrato administrativo en la Ley de contrataciones públicas venezolana", en *Revista de Administración Pública Nº 176,* Madrid, 2008.
11. Hacia los orígenes históricos del derecho administrativo venezolano: la construcción del contrato administrativo, entre el derecho público y el derecho privado", en *Boletín de la Academia de Ciencias Políticas y Sociales No. 147 ,* Caracas, 2009
12. "La regulación económica de actividades de interés general y la vuelta a modelos estatistas", en *Modernizando el Estado para un país mejor. IV Congreso Nacional de Derecho Administrativo,* Lima, 2010.
13. "El Derecho Administrativo Global y el concepto de Buena Administración", *Anuario de la Facultad de Derecho,* Universidad La Coruña, España, 2012.
14. "El arbitraje internacional de inversiones, la intervención administrativa en la economía y el Derecho administrativo global", en *XVII Jornadas Centenarias Internacionales. Constitución, Derecho administrativo y proceso,* Colegio de Abogados del Estado Carabobo, FUNEDA, Caracas, 2014.
15. "Eduardo García De Enterría y la renovación del Derecho administrativo. Reflexiones desde la Carta iberoamericana de los derechos y deberes del ciudadano en relación con la Administración pública", en *La protección de los derechos frente al poder de la administración*, Editorial Jurídica Venezolana, Temis, Tirant Lo Blanch, Bogotá, 2014
16. "Control judicial, justicia administrativa y el arbitraje internacional de inversiones", *Foro Iberoamericano de Derecho Administrativo,* 2015.
17. "El arbitraje internacional de inversiones desde el Derecho Administrativo Global", en *Revista Internacional de Arbitraje N° 24,* Bogotá, 2016.
1. *What to Expect from the Arbitration Center of the Union of South American Nations (UNASUR)?,* en *TDM Vol 13. Issue 2,* 2016.
2. "Regulación económica y arbitraje internacional de inversiones", en *Revista Electrónica de Derecho N° 1,* 2007, Universidad de Porto, Porto, 2016.
3. "La lucha contra las inmunidades del poder y el Derecho Administrativo venezolano", en *Revista Electrónica de Derecho Administrativo Venezolano N° 8,* Caracas, 2016.
4. "Justicia constitucional y poder político en Venezuela", en *Anuario de Derecho Constitucional Latinaomericano 2016,* Fundación Konrad Adenauer Stiftung, 2016.
5. "Interdicción a la arbitrariedad desde el derecho administrativo global", en *Revista Española de Derecho Administrativo N° 181,* Madrid, 2016.
6. La ordenación jurídica del agua en Venezuela", en *Perfiles de la ordenación jurídica del agua en Italia, España y América Latina,* G. Giappichelli Editore-Tirant Lo Blanch, Italia-España, 2017.

**4**

**I.     QUALIFICATIONS**

1.     I am a Venezuelan citizen. I have a Law Degree (1997), with the mention *summa cum laude,* granted by the *Universidad Católica Andrés Bello* (Caracas, Venezuela). I have an *Advanced Study Diploma* (2001) by the *Universidad Complutense de Madrid*, and a Doctoral Degree, *cum laude,* granted by that University in 2002. I am a tenured professor of Administrative Law at the *Universidad Central de Venezuela* (Caracas, Venezuela). Also, I am Administrative Law Professor at the *Universidad Católica Andrés Bello*. In that University I am Professor of the Administrative Law and Constitutional Law Postgraduate Studies. I am the Chairman of the Public Law Center of the *Univerisdad Monteávila* (Caracas, Venezuela). Also, I am a researcher of the Legal Research Institute of the *Universidad Católica Andrés* Bell. I was a visiting researcher at *Georgetown University* (2014).

2.     I am the Director of the *Revista Electrónica de Derecho Administrativo* (*Electronic Journal of Venezuelan Administrative* Law) and the Director of the *Revista de la Facultad de Derecho* de la *Universidad Católica Andrés Bello* (*Universidad Católica Andrés Bello Law Review*). I am member of the Ibero-American Association of Regulation (ASIER); the International Institute of Administrative Law and the Ibero-American Forum of Administrative Law (FIDA).

3.     I have wrote fourteen books related with Administrative and Constitutional Law, and more than hundred articles in those fields published in Venezuela, Colombia, Peru, Brazil, Argentina, Chile, México, Dominican Republic, United States of America, Spain, Italy and Poland. Part of my research work has been oriented to the oil regulation in Venezuela, including my 2016 book *El pensamiento jurídico venezolano en el Derecho de los Hidrocarburos* (*The Venezuelan legal principles in the Hydrocarbons Law*).